IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>APPROXIMATELY $27,000 IN UNITED STATES CURRENCY SEIZED FROM LARRY SAUNDERS ON JANUARY 12,1022 AT THE CHARLOTTE-DOUGLAS INTERNATIONAL AIRPORT | Civil No. 3:22cv232 |

## **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

NOW COMES the United States of America, Plaintiff herein, by and through Dena J. King, United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

### INTRODUCTION

1. This is a civil action in rem against approximately $27,000 in United States currency seized from Larry Saunders on January 12, 2022, at the Charlotte-Douglas International Airport (the "Currency").

2. After a narcotics detection K9 alerted to Saunders' checked bag, law enforcement found $27,000 in cash hidden among clothes during the execution of a search warrant. The Currency was in denominations and rubber-banded consistent with the proceeds of street level narcotics transactions, smelled strongly of weed, and a second drug detection K9 alerted to the odor of narcotics on the Currency when placed in a lineup of scent boxes.

3. Saunders, who has no known reported legitimate income and recently collected pandemic unemployment benefits, was on one of ten trips booked (usually

1

last minute with a short turnaround) to California (a known drug source location) from May 2020 to February 2020, spending at least $4,228 on flights during this time period. Further, in 2021, Saunders had 1,400 attempted CashApp transactions. Such activity, especially for an individual with no legitimate earnings, is consistent with that of a money or drug courier and/or dealer.

4. Moreover, $27,000 is an unusually large amount of money to carry in cash form hidden among clothes. If the Currency was legitimately derived or intended to be used for any legal purpose in California, transporting it across the country in cash form made little sense—Saunders could have simply deposited it into his bank account after he obtained it (presumably in North Carolina), and then accessed the Currency at any ATM location in California. Similarly, Saunders could (much more safely) electronically transfer funds (whether by wire transfer, Venmo, Zelle, CashApp, etc...) to any legitimate recipient.

5. Therefore, the fact that Saunders chose to transport the Currency as cash is, at the very least, probative of an illicit connection and/or a desire to avoid either currency reporting requirements or a paper trial for the Currency. *See, e.g., United States v. $183,791.00 in U.S. Currency*, 391 Fed. Appx. 791, 795 (11th Cir. 2010) ("Although a large amount of cash alone is insufficient to meet the government's burden, it is highly probative of a connection to some illegal activity . . . legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages in a backpack . . . because there are better, safer means of transporting cash if one is not trying to hide it from the authorities. In

contrast, drug rings do often utilize couriers to transport large amounts of cash in rubber-banded bundles.") (internal quotations and citations omitted).

6. Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

7. Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

9. Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

10. The Currency has been seized and is now within the Western District of North Carolina.

11. Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Special Agent ("SA") Daniel Leal,

this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

*The interdiction*

12. On January 12, 2022, law enforcement at the Charlotte airport was conducting a narcotics interdiction operation on outbound domestic flights to known drug-source locations, which included American Airlines ("AA") flight 399 bound for Los Angeles, CA.

13. That day, Larry Saunders was traveling to Los Angeles on AA flight 399.

14. As part of the interdiction operation, HSI Task Force Officer ("TFO") Jonathan Cerdan deployed K9 Cali, a properly trained and certified narcotics detection canine, to conduct open-air sniffs of checked suitcases prior to their being loaded onto AA flight 399.

15. K9 Cali alerted to two suitcases in a lineup of bags pulled from a luggage cart, one of which was a dark blue "Columbia" brand suitcase belonging to Saunders.

16. Law enforcement detained the suitcases and moved them to the boarding area of gate B14.

17. Saunders approached the boarding gate and TFO Smith contacted him, advising him a narcotics K9 had alerted to the odor of narcotics on the suitcase.

18. During TFO Smith's discussion with Saunders, Saunders initially granted consent to search the suitcase but revoked it after TFO Smith asked him if there were any valuables or large amounts of currency inside the bag. At this point, Saunders became visibly upset, stating multiple times he no longer consented to a

4

search the bag.

19. The encounter ended with law enforcement telling Saunders he was free to leave and/or board his flight, but the suitcase was being detained and law enforcement would apply for a search warrant for the bag.

20. Saunders then started to board the flight, but a short time later, walked back out of the jetway and told law enforcement that he was not flying to Los Angeles.

21. TFO Cerdan applied for and obtained a state search warrant for the bag. SA Neal assisted with documenting the investigation and execution of the search warrant.

22. Upon execution of the warrant, TFO Cerdan located inside the suitcase rubber-banded bundles of U.S. currency in various denominations hidden inside dirty socks on one side of the suitcase and inside pants on the other side:



23. TFO Cerdan noticed the currency smelled of marijuana when separated from the suitcase.

24. TFO Cerdan also found a small baggie of five pills, identified as M325 (Acetaminophen and Oxycodone Hydrochloride 325 mg / 10 mg):



25. The suitcase contained no prescription bottes or other indication these opioids were legally possessed by Saunders.[1]

*The second K9 alert and Currency's deposit*

26. The Currency was then placed in a lineup of six scent boxes and presented to K9 Lily, a properly trained and certified narcotics detection canine.

27. K9 Lily alerted to the odor of narcotics in the scent box which contained the Currency.

---

[1] There is also a likelihood these pills were either fentanyl or contained fentanyl. *See, e.g.*, https://www.dea.gov/sites/default/files/2021-05/Counterfeit%20Pills%20fact%20SHEET-5-13-21-FINAL.pdf. Should the case progress, the Government will confirm their chemical composition through testing.

28. The Currency was later transported to Loomis, where it was counted and found to total $27,000, consisting of 221 one hundred-dollar bills, 58 fifty-dollar bills, and 100 twenty-dollar bills.

29. The Currency's denominations and rubber-banding were consistent with that derived from street-level narcotics sales, rather than legitimate cash withdrawn from a bank.

30. The Currency was deposited into an account established to hold seized funds.

*Saunders' criminal history*

31. Saunders criminal history includes charges for assault and battery, and possession of marijuana paraphernalia; and convictions on separate charges for possession of marijuana paraphernalia, possession of marijuana, resisting a public officer, and a plea to a lesser degree (possession) on a felony possession with intent to distribute marijuana charge.

*Saunders' lack of legitimate income*

32. With his administrative petition, Saunders did not submit any documentation of legitimate income, a legitimate source of the Currency, or any purported legal intended use of the Currency.

33. Records obtained from the State of North Carolina indicate that Saunders has no known reported legitimate income,[2] and collected Disaster Unemployment Assistance benefits from April to November of 2020.

---

[2] In April 2021, Saunders applied for a US passport and claimed his occupation was "Truck Driver."

*Saunders' suspicious travel and CashApp history*

34. Saunders travel history is consistent with that of a drug or money courier.

35. Saunders—while having no known legitimate income and receiving COVID-19 pandemic unemployment assistance benefits—spent roughly $4,228 from May 2020 through February 2022 on flights, almost all to California (a known drug-source state), purchasing and/or taking at least 10 round trips from North Carolina to California. These flights included only short, several-day stays in Los Angeles, and were often purchased at the last minute—for example, as to the January 12, 2022, flight underlying the seizure in this case, Saunders purchased the ticket on January 11.

36. Further, Saunders has three CashApp accounts, an analysis of which reveals activity inconsistent with an individual with purportedly no legitimate income.

37. Specifically, in 2021, Saunders had over 1,400 attempted payer to payer transactions, transfers, or payments, with the overwhelming majority of the payment comments by the senders of funds containing vague messages nor no messages at all, consistent with an attempt to avoid detection of the true purpose of the transactions.

**FIRST CLAIM FOR RELIEF – THE CURRENCY**
**(21 U.S.C § 881(a)(6))**

38. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 37 above as if fully set forth herein.

39. The Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 (a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

40. Upon information and belief, the following persons may claim an interest in the Currency seized on January 12, 2022:

Larry J. Saunders

With courtesy copy to:

Christopher M. Young, Esq.
The Young Law Firm, PLLC
700 12th Street, NW, Suite 700
Washington, DC 20005

## CONCLUSION AND PRAYER FOR RELIEF

41. By virtue of the foregoing, all right, title, and interest in the Currency vested in the United States at the time of the commissions of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States.

WHEREFORE, the United States of America respectfully prays the Court that:

1. A warrant for the arrest of the Currency be issued;

2. Due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

3. Judgment be entered declaring the Currency to be condemned and forfeited to the United States of America for disposition according to law; and

4. The United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 24th day of May, 2022.

        DENA J. KING
        UNITED STATES ATTORNEY

        /s/ Seth Johnson
        J. Seth Johnson
        NC Bar No. 53217
        Assistant United States Attorney
        Suite 1650, Carillon Building
        227 West Trade Street
        Charlotte, North Carolina 28202
        Telephone: (704) 338-3159
        Email: seth.johnson@usdoj.gov

## VERIFICATION

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 24 day of May, 2022.

_____
Special Agent Daniel Leal
Department of Homeland Security,
Homeland Security Investigations